United States Court of Appeals

For the Eighth Circuit

_____

No. 22-1739
_____

Chantelle Charne Robbertse

*Petitioner*

v.

Merrick B. Garland, Attorney General of the United States

*Respondent*
_____

Petition for Review of an Order of the
Board of Immigration Appeals
_____

Submitted: January 11, 2023
Filed: August 21, 2023
_____

Before GRASZ, MELLOY, and KOBES, Circuit Judges.
_____

MELLOY, Circuit Judge.

Petitioner Chantelle Charne Robbertse appeals the BIA's finding of removability and denials of withholding of removal and relief under the Convention Against Torture (CAT). Finding no error, we affirm.

Appellate Case: 22-1739    Page: 1    Date Filed: 08/21/2023 Entry ID: 5308081

I.

Robbertse, a citizen of South Africa, entered the United States in 1998 and became a lawful permanent resident in 2012. She participated in an identity theft scheme with her mother that defrauded the California Employment Development Department of roughly $475,000 using the personally identifying information of over fifty people. In June 2019, pursuant to a plea agreement, she pleaded guilty to one count of Aggravated Identity Theft predicated on Wire Fraud. *See* 18 U.S.C. §§ 1028A(c)(5) (referencing the predicate offenses contained at 18 U.S.C. §§ 1341–51, including § 1343, wire fraud).

Her specific count of conviction alleged a loss amount of only $1,003.00. Charges alleging greater loss amounts were dismissed pursuant to her plea agreement. In the plea agreement itself, however, Robbertse admitted expressly that she "aided and abetted" her mother in the mother's scheme of "defrauding" the State of California of $475,350.28. In addition, Robbertse agreed that she would be jointly liable with her mother for restitution in the larger, total amount. And at sentencing, the district court found her jointly liability with her mother for restitution in the amount of $475,350.28.

Next, the BIA charged Robbertse as removable, characterizing her conviction as a conviction for an offense involving "fraud or deceit" with a loss to the victim exceeding $10,000 thus qualifying as an "aggravated felony" under 8 U.S.C. § 1101(a)(43)(M)(i) and making Robbertse removable pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii). In reaching this conclusion, the BIA determined that the elements of the identity theft offense, 18 U.S.C. § 1028A, included a reference in the alternative to several qualifying felony offenses, and required as an element that the identity theft be committed "during and in relation to" one of the other qualifying felonies. Robbertse challenged her removability, arguing her conviction did not qualify under the categorical approach as an offense involving fraud or deceit. She also argued, based on a "circumstance-specific approach," that her offense did not cause a loss exceeding $10,000. She also sought discretionary relief in the form of

-2-

Appellate Case: 22-1739     Page: 2     Date Filed: 08/21/2023 Entry ID: 5308081

withholding of removal. Finally, she sought relief under the Convention Against Torture. As to withholding of removal and CAT relief, Robbertse asserted she would be persecuted or tortured in South Africa because she is white, her father had been a high-ranking member of military intelligence prior to 1998, and her family had otherwise been targeted by opponents of apartheid.

An IJ rejected her arguments, and the BIA affirmed, adopting the reasoning and findings of the IJ and adding additional, consistent analysis. She renews her arguments on appeal, asserting a categorical-approach argument as to the "fraud or deceit" element and a circumstance-specific argument as to the $10,000 loss amount. Because "the BIA adopted the IJ's reasoning in relevant part while adding reasoning of its own . . . , we will consider both decisions." *Tian v. Holder*, 576 F.3d 890, 895 (8th Cir. 2009).

## II.

The Supreme Court in *Nijhawan v. Holder*, described the "aggravated felony" definition within 8 U.S.C. § 1101(a)(43)(M), as "contain[ing] some language that refers to generic crimes and some language that almost certainly refers to the specific circumstances in which a crime was committed." 557 U.S. 29, 38 (2009). The Court concluded that the $10,000 loss amount was to be analyzed applying a circumstance-specific approach under a clear-and-convincing evidence standard. *Id.* at 42–43; *see also Sokpa-Anku v. Lynch*, 835 F.3d 793, 795 (8th Cir. 2016) ("In *Nijhawan*[], the Supreme Court held that the $10,000 threshold in § 101(a)(43)(M)(i) is not an element of a fraud offense and therefore may be proved by evidence of the particular circumstances of an alien's specific offense."). The Court later concluded in *Kawashima v. Holder*, that the "fraud or deceit" element was to be analyzed categorically but that the term "deceit" was broader than the term "fraud" and that the underlying offense must "involve" deceit. 565 U.S. 478, 484 (2012) ("Rather, [1101(a)(43)(M)](i) refers more broadly to offenses that 'involv[e]' fraud or deceit—meaning offenses with elements that necessarily entail fraudulent or deceitful conduct."); *see also Mowlana v Lynch*, 803 F.3d 923, 925 (8th Cir. 2015)

-3-

("The accompanying term 'involves' is broadening, and an offense '*involves* fraud or deceit' under subsection (M)(i) as long as it contains elements that 'necessarily entail fraudulent or deceitful conduct.'" (quoting *Kawashima*, 565 U.S. at 484)).

Regarding the presence of a fraud or deceit element, we easily conclude that Robbertse's conviction involved fraud or deceit. The wire-fraud statute, 18 U.S.C. § 1343, incorporated by reference in the identity-theft statute, § 1028A, provides in part, "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire . . . communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined . . . or imprisoned[.]" Section 1028A lists wire fraud and other underlying predicate felonies in the alternative, and we conclude this section lists alternative elements rather than means. *See Mathis v. United States*, 579 U.S. 500, 505–06 (2016) (distinguishing elements and means); *see also United States v. Jenkins-Watts*, 574 F.3d 950, 969–70 (8th Cir. 2009) (describing as an "element" the predicate felony underlying a § 1028A charge).

Regarding the circumstance-specific approach applicable to the loss-amount determination, Robbertse argues the underlying standards of proof in her criminal case refute the BIA's conclusions. She also argues that any amounts greater than the $1,003.00 alleged in her count of conviction relate to dismissed counts and cannot be considered. She argues, essentially, that because her specific count of conviction did not require proof beyond a reasonable doubt that she caused a loss in excess of $10,000, and because sentencing determinations rest on a mere preponderance of the evidence, her record of conviction fails to establish a loss amount greater than $10,000 by clear-and-convincing evidence.

We disagree and conclude Robbertse misconstrues the nature of *Nijhawan*'s circumstance-specific approach. In *Nijhawan*, the Court neither declared particular evidence "off limits" for the circumstance-specific analysis nor otherwise attempted

to define the world of evidence that might be considered. *See Nijhawan*, 557 U.S. at 41 (addressing a petitioner's proposed evidentiary limitations and stating, "nothing in prior law . . . so limits the immigration court"). Rather, the Court emphasized the need to focus on the previously applicable burdens of proof when drawing inferences from different aspects of a prior record. *See id.* at 42 ("immigration judges must assess findings made at sentencing 'with an eye to what losses are covered and to the burden of proof employed.'" (citation omitted)). In general, the elements of a count of conviction or a count to which a defendant pleads guilty have been proven beyond a reasonable doubt. In contrast, mere allegations contained in dismissed counts generally provide little future evidentiary value. Similarly, little can be said of the elements of acquitted counts other than the fact that a jury failed to find all such elements beyond a reasonable doubt.

But, in applying *Nijhawan*'s circumstances-specific approach, the BIA is not constrained to looking only at the elements of a prior offense with the categorical approach. Rather, the BIA may examine any relevant evidence when applying the clear-and-convincing standard. Under this standard, sentencing determinations, standing alone, may not always suffice; such determinations generally rest on the preponderance-of-the-evidence standard. But, express admissions, such as those found in a plea colloquy or written plea agreement, carry a general evidentiary value that may suffice. And, sentencing determinations may carry greater weight when considered alongside such evidence. *Nijhawan*, 557 U.S. at 42–43 ("We can find nothing unfair about the immigration judge's having here relied upon earlier sentencing-related material. The defendant's own stipulation, produced for sentencing purposes, shows that the conviction involved losses considerably greater than $10,000. The court's restitution order shows the same. In the absence of any conflicting evidence (and petitioner mentions none), this evidence is clear and convincing.").

Against this backdrop, when looking at the totality of such evidence, the amount at issue must be "tied" or "tethered" to the offense of conviction. *Tian*, 576 F.3d at 895. The loss amount, therefore, may not relate merely to "general conduct"

that is otherwise unconnected to the count of conviction. *Nijhawan*, 557 U.S. at 42. And the loss amount may not rest solely on the allegations contained in "acquitted or dismissed counts." *Id.* But, general evidence otherwise satisfying the clear-and-convincing standard as to the offense at issue is not somehow infirm or beyond consideration merely because that evidence also relates to the allegations in a dismissed count.

Here, in her criminal plea, Robbertse expressly consented to joint liability for restitution in an amount vastly exceeding the $10,000 threshold at issue in the present setting. Further, she conceded that her criminal activity served to aid and abet her mother's entire fraudulent scheme as to the much larger amount. These concessions suffice to establish by clear and convincing evidence that her offense caused a loss in excess of $10,000. *See Sokpa-Anku*, 835 F.3d at 796 (finding the requisite loss amount based, in part, on a restitution order and noting that *Nijhawan* had stated restitution is indicative of loss amount). Robbertse's arguments to the contrary amount to attempts to confuse the broadly permitted evidentiary analysis of *Nijhawan* with a categorical or modified categorical approach. We reject such arguments.

### III.

Regarding withholding of removal, the agency determined Robbertse was ineligible for relief because her offense qualified as a "particularly serious crime." 8 U.S.C. § 1231(b)(3)(B) (barring withholding of removal for a noncitizen "if the Attorney General decides that . . . (ii) the alien, having been convicted by a final judgment of a particularly serious crime is a danger to the community of the United States"). The agency addressed her sentence and found her offense was not a *per se* "particularly serious crime" because her resulting sentence was less than five years' imprisonment. *See id.* But, applying a multifactored analysis as set forth in *Tian*, 576 F.3d at 897 and *Matter of N-A-M*, 24 I&N Dec. 336, 342 (BIA 2007), the agency weighed the factors and found Robertse ineligible.

Appellate Case: 22-1739   Page: 6   Date Filed: 08/21/2023 Entry ID: 5308081

In general, our review as to this issue is limited to the purely legal question of whether the agency applied the correct standard; we are prohibited from reviewing the agency's balancing of factors. 8 U.S.C. § 1252(a)(2)(C) and (D) (barring general court review of withholding determinations for noncitizens convicted of aggravated felonies but preserving review of "of constitutional claims or questions of law"). Accordingly, we address Robertse's argument that the agency failed to apply the proper standard.

Here, Robbertse alleges various infirmities with the agency's articulation of the standard, but we find no error. For example, she argues the IJ and BIA failed to address relevant factors such as the length of her sentence or the fact that property crimes are less likely to be "particularly serious" than violent crimes. She also focuses upon the identity theft statute rather than the underlying and incorporated-by-reference fraud statute. Ultimately she characterizes her offense as relating to a "petty crime" akin to "jaywalking."

We find no legal error. The agency could have been more clear in its discussion of factors, but when the record reflects identification and application of the proper standard, our analysis ends. Robbertse's arguments as to the improper standard amount largely to a selective reading of the underlying agency decisions. For example, one relevant factor is the "type of sentence," not merely the length of sentence, and the agency clearly considered both the length of sentence (by not adopting a *per se* analysis) and the type of sentence (the large restitution order). The agency clearly was swayed in its analysis by the scale of the loss and the resulting restitution of almost half a million dollars. The failure to more clearly and methodically recite the relevant factors when conducting its analysis does not amount to legal error.

IV.

Finally, we find no error in the BIA's denial of CAT relief. Robbertse's arguments and evidence regarding country conditions and the likelihood of torture

fall well short of the showing required for CAT relief. To the extent she argues the IJ and BIA erred in not admitting certain additional evidence, she fails to articulate clearly what the evidence in question would have shown and how it would have changed the CAT analysis.

Accordingly, we affirm the judgment of the BIA and deny the petition for review.

_____